Filed 2/17/26  Ohanian v. Gardens of Paradise CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| EDMOND OHANIAN, | B339614 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV33009) |
| v. | |
| GARDENS OF PARADISE, LLC, et al., Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Scheper, Judge.  Dismissed in part, affirmed in part.

Law Office of Mainak D'Attaray and Mainak D'Attaray for Defendants and Appellants.

Shaumyan & Derbarseghian, Alfred Shaumyan and Aren Derbarseghian for Plaintiff and Respondent.

Defendants and appellants Gardens of Paradise, LLC, Ronit Waizgen, and Shaul Yakovi (collectively, defendants) appeal from a default judgment. Although the trial court set aside defendants' defaults based on a stipulation the parties had ostensibly signed, the court later determined that defendants' counsel had engaged in fraud and filed a fabricated stipulation. The court reentered the defaults and imposed sanctions. Defendants subsequently filed a motion to set aside the defaults due to attorney fault. The trial court denied the motion and subsequently entered default judgments against defendants.

We dismiss as untimely defendants' appeal of the trial court's order imposing $7,125 in sanctions payable to plaintiffs' counsel. We affirm the remainder of the judgment. The trial court did not abuse its discretion in reentering the defaults or imposing a $5,000 sanction payable to the court. Further, the trial court did not err in denying the motion to set aside the defaults.

**FACTUAL AND PROCEDURAL BACKGROUND**

In September 2021, plaintiff and respondent Edmond Ohanian filed a complaint alleging that Gardens of Paradise, Waizgen, Yakovi, Ben and Reef Gardens Inc., and Sandra Avalos made false representations to induce him to reserve Gardens of Paradise as a wedding venue during the COVID-19 pandemic.[1] Defendants did not timely file a responsive pleading. In December 2021, at Ohanian's request, the clerk entered defendants' defaults.

The parties subsequently stipulated to set aside the defaults. On January 3, 2022, defendants' counsel Mainak

---

[1] Ben and Reef Gardens and Sandra Avalos are not parties to this appeal.

2

D'Attaray filed the stipulation. The trial court rejected it because it did not include defendant Ben and Reef Gardens. Ohanian's counsel told D'Attaray to correct the stipulation to indicate that the default against Ben and Reef Gardens would "remain in place."

On January 24, 2022, D'Attaray filed a revised stipulation adding Ben and Reef Gardens. The court again rejected the stipulation because Ben and Reef Gardens had not paid first appearance fees. According to Ohanian's counsel, he advised D'Attaray that the stipulation process was " 'taking far too long.' " He indicated he would move forward with the defaults if there was further delay.

At a case management conference on February 7, 2022, the trial court noted that Ben and Reef Gardens had paid the fee and directed the parties to refile the stipulation. D'Attaray resubmitted the earlier stipulation after the case management conference. The stipulation was electronically received by the court but not filed. According to Ohanian's counsel, D'Attaray said "the stipulation did not appear on the docket because it was a re-filing." However, by late February 2022, "D'Attaray still had not set the defaults aside." In late March 2022, Ohanian's counsel e-mailed D'Attaray to warn him that Ohanian intended to move forward with the default process. D'Attaray did not respond.

In April 2022, the trial court held a continued case management conference. Defendants did not appear. The trial court stated at the hearing that "three (3) stipulations to set aside default were rejected and four (4) of the five (5) defendants remain in default status." At another hearing in June 2022, at which defendants again failed to appear, the court issued an

3

order to show cause regarding entry of default judgment and set a hearing for August 5, 2022.

On the morning of the August 5 hearing, defendants filed an ex parte application to set aside the clerk's defaults. Defendants contended in relevant part that Code of Civil Procedure section 473, subdivision (b), required the court to set aside the defaults because they resulted from D'Attaray's oversight.[2] D'Attaray submitted a declaration indicating that because of staff turnover in his office, his illness, and "other disruptions," he failed to realize that the stipulation had been rejected. The trial court denied the ex parte application without prejudice. The court's minute order indicated that a case management conference and order to show cause regarding entry of default judgment had been scheduled for August 12. The court warned: "If a noticed motion or proper stipulation and order to vacate entry of default has not been submitted prior to 8/12/2022, the Court will proceed with the default judgment."

In advance of the August 12 hearing, D'Attaray refiled the parties' stipulation dated January 2022. D'Attaray had revised the proposed order attached to the stipulation to more specifically identify the defendants who were the subject of the default. At the hearing, however, the court indicated it had not received a stipulation. The court continued the matter. Later that morning, Ohanian's counsel e-mailed D'Attaray and demanded that he withdraw the stipulation, stating: "I am shocked to hear you refiled a stipulation that I did not approve of and that you have not served me with. . . . [¶] You are aware that I did not approve refiling of the stipulation or any changes that you have made. To

---

[2]   All further undesignated statutory references are to the Code of Civil Procedure.

4

the extent you reused my older signature, that is fraud and a clear violation of your ethical obligations."

D'Attaray refused to withdraw the stipulation. He responded to Ohanian's counsel: "You did not withdraw your stipulation at any time. I do not have anything in writing or orally that says you did. The only reason the Court rejected the stipulations was because of the wording in the order. So we refiled to conform with the Court's directions. [¶] That is not fraud."

On August 16, 2022, without the appearance of the parties, the trial court approved the stipulation and signed the proposed order setting aside the defaults as to defendants and Ben and Reef Gardens. Defendants subsequently filed an answer to the complaint.

At the next case management conference in October 2022, Ohanian's counsel told the trial court that D'Attaray had filed the stipulation in August 2022 without his consent. The court instructed Ohanian to file a motion before the next case management conference in January.

In December 2022, Ohanian filed a motion asking the court to strike defendants' answer, re-enter the defaults, and impose monetary sanctions. Ohanian contended D'Attaray submitted a "forged" stipulation in August 2022 by fraudulently affixing Ohanian's counsel's signature from the January 2022 stipulation onto a different stipulation, with different terms, without Ohanian's counsel's permission. Defendants did not file a timely opposition addressing Ohanian's substantive arguments.[3]

---

[3] On the day of the hearing on the motion, defendants filed an untimely "limited opposition," arguing that Ohanian had not

5

In February 2023, the trial court granted Ohanian's motion and struck the order on the stipulation and defendants' answer, reinstated the defaults, and imposed monetary sanctions under section 128.5.[4] In a written order, the court stated that it was "prepared to set aside the August 16 stipulation and reinstate the defaults" in the interest of fairness. The court found "D'Attaray's conduct between December of 2021 and the filing of the fraudulent stipulation in August of 2022 falls within the definition of 'actions or tactics, made in bad faith, that are frivolous . . . .'" The court noted that D'Attaray's decision to seek ex parte relief to set aside the defaults in August 2022 belied his "alleged belief that [Ohanian's] agreement to set aside the defaults made in December of 2021 was effective in August of 2022." The court concluded that "D'Attaray's conduct throughout his participation in this litigation was in bad faith and designed to cause unnecessary delay and expense." The trial court further found that D'Attaray's explanations for his failure to file a timely opposition were not credible and were further evidence of his bad faith tactics to delay the proceedings.

The court ordered defendants and D'Attaray to pay $7,125 in attorney fees to Ohanian's counsel under section 128.5,

---

provided proper notice and that the motion for sanctions was improperly combined with a motion to strike defendants' answers. Although the trial court continued the hearing to allow defendants to file a timely written opposition addressing these substantive issues, defendants failed to do so.

[4] The court's minute order incorporated by reference its ruling as fully reflected in the reporter's transcript. Defendants did not designate the reporter's transcript as part of the record on appeal.

6

subdivision (a).  The court also ordered defendants and D'Attaray to pay $5,000 in sanctions to the court under section 128.5, subdivision (f).  The court indicated it would report D'Attaray to the State Bar pursuant to Business and Professions Code section 6086.8, subdivision (a).[5]

In December 2023, defendants moved to set aside the reinstated defaults.  Defendants argued that set aside relief was mandatory under section 473, subdivision (b), because D'Attaray's conduct caused "[d]efendants' answers to be stricken and defaults entered."  In a supporting declaration, D'Attaray "admit[ted his] error, inadvertence and mistake in not following up on the status of the stipulation promptly."  D'Attaray explained that he "lost track" of the case in 2022 due to health issues and staff turnover.  He claimed the filing confirmation from his legal service led him to believe the February 2022 stipulation had been filed, and he did not know the trial court rejected it until he received the notice of the show cause hearing.  With respect to the August 2022 stipulation, D'Attaray denied that it was fraudulent.  He stated that he did not know Ohanian "intended to rescind" the stipulation before D'Attaray

---

[5]     Business and Professions Code, section 6086.8, subdivision (a), requires a court to report to the State Bar if an attorney "is liable for any damages resulting in a judgment against the attorney in any civil action for fraud, misrepresentation, breach of fiduciary duty, or gross negligence committed in a professional capacity."

Defendants appealed from the trial court's February 2023 order.  (*Ohanian v. Gardens of Paradise, LLC et al.*, B328786, Ct. App., Second Dist., Mins., June 27, 2023.)  In June 2023, the appeal was dismissed for failure to file a case information statement.  (Cal. Rules of Court, rule 8.100(g).)

resubmitted it in August 2022. D'Attaray repeatedly denied engaging in forgery or fraud and suggested Ohanian's counsel "attempted to unilaterally rescind the stipulation after the fact and bandied about the terms fraud and forgery so cavalierly." However, he admitted that he "simply refiled the exact stipulation that was signed in January 2022. That was my mistake."

Ohanian opposed the motion. Ohanian argued that D'Attaray's declaration was conclusory and did not sufficiently state facts to support that his mistake was excusable or that there was a causal nexus between his mistake and the entry of the defaults. Ohanian also contended that defendants' motion was an improper request for reconsideration of the trial court's denial of the August 2022 ex parte motion. Finally, Ohanian argued that the original stipulation expired after the eight months during which it was not properly filed. He contended there was no reasonable basis for D'Attaray to believe Ohanian still agreed to the stipulation in August 2022.

In January 2024, the trial court denied defendants' motion to set aside the defaults. The court found it had no jurisdiction to grant set aside relief because defendants' motion was untimely. The court further found "that the mistake proffered by Defendant's counsel, that he should have checked with counsel to see if the stipulation was in force and effect, does not relate to the entry of default by the clerk at all, and is belied by Plaintiff's counsel's declaration and the proceedings in this Court. On August 5, 2022, Defendant's co-counsel applied ex parte to have the defaults set aside. That application was denied by the Court. The ex parte application clearly demonstrates that counsel knew the defaults were in place and that the stipulation was no longer

8

effective.  It was after this hearing that the fraudulent stipulation was submitted to the Court.  Under these circumstances, Defendant's counsel's declaration in support of this motion is provably false."

In April 2024, the court entered default judgment against defendants, jointly and severally, in the amount of $52,642.83.  This appeal followed.

## DISCUSSION

### I.     The Trial Court's Sanctions Order Was Not An Abuse Of Discretion

#### A.     Appealability

The trial court's February 2023 order imposed monetary sanctions against defendants and D'Attaray of $7,125 payable to Ohanian's counsel and $5,000 payable to the court.

Sanctions orders over $5,000 are immediately appealable. (§ 904.1, subd. (a)(12).)  Sanctions orders of $5,000 or less are appealable from the final judgment.  (*Id*., subd. (b).)  If no appeal is immediately taken from an order for sanctions over $5,000, "[i]t is . . . not subject to review in an appeal of subsequent appealable orders or from a final judgment."  (*Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1686.)

At our invitation, both parties submitted supplemental briefing regarding whether all or part of the appeal from the order imposing monetary sanctions was untimely.  Defendants concede, and we agree, that the trial court's $7,125 sanctions award was immediately appealable after it was issued in February 2023.  To the extent defendants' instant appeal seeks to challenge the $7,125 sanction, it is untimely, and we dismiss that portion of the appeal.  (§ 904.1, subd. (a)(12); *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d

9

35, 46 [" 'If a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review.' "].)

As to the $5,000 sanctions award, the parties dispute whether it was separately appealable from the final judgment under section 904.1, subdivision (b).  Ohanian contends that because both sanctions awards arose from the same offending conduct, they must be considered in the aggregate, and therefore the $5,000 award was also appealable in February 2023.  Defendants urge that the two awards arise from *different* conduct and are payable to different parties, thus aggregation is improper.

Courts that decline to aggregate sanctions to satisfy appealability criteria cite a variety of factors to justify treating the sanctions separately.  In *Morales v. City and County of San Francisco* (2025) 114 Cal.App.5th 43, the court found no basis to aggregate sanctions because they were "issued on different dates, requested by different motions, and involv[ed] separate acts . . . ." (*Id.* at p. 50.)  Similarly, in *Calhoun v. Vallejo City Unified School Dist.* (1993) 20 Cal.App.4th 39 (*Calhoun*), the court found aggregation improper where the sanctions were authorized by different statutes and were payable to different defendants, even though they were based on the same conduct.  (*Id.* at pp. 44–45; but see *Champion/L.B.S. Associates Development Co. v. E-Z Serve Petroleum Marketing, Inc.* (1993) 15 Cal.App.4th 56, 59–60 [declining to aggregate sanctions but stating in dicta that aggregation may be appropriate where same conduct is being sanctioned multiple times].)

Here, it is unclear whether the trial court intended the sanctions awards to penalize D'Attaray for separate and distinct

10

acts or to punish his "single course of misconduct" throughout the litigation. (*Calhoun*, *supra*, 20 Cal.App.4th at p. 44.) In light of this ambiguity, we decline to aggregate the trial court's sanctions awards, which would render the appeal of both awards untimely. (See *id.* at pp. 44–45 [rejecting aggregation where separateness of sanctions presents "a close question"].) We conclude the trial court's order as to the $5,000 sanctions award is appealable under section 904.1, subdivision (b).

B. **Substantial evidence supported the trial court's finding of sanctionable conduct**

Defendants contend the trial court erred by granting Ohanian's motion for sanctions because there was no evidence to support a finding that the stipulation D'Attaray filed was forged. We find no abuse of discretion.

Courts may impose as a sanction any "reasonable expenses, including attorney's fees, incurred by another party as a result of [bad-faith] actions or tactics . . . that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a); see *id.*, subd. (f)(2).) Courts may also order "directives of a nonmonetary nature" or "an order to pay a penalty into court" "to deter repetition of the action or tactic or comparable action or tactic by others similarly situated." (*Id.*, subd. (f)(2).) "[S]ection 128.5 sanctions can be imposed against a lawyer for unjustifiable dereliction in his or her obligations—i.e., conduct that is 'frivolous'—committed with an improper motive, such as to harass or manipulate opposing counsel or the court—i.e., committed in subjective 'bad faith'—and which results in an opponent incurring additional costs." (*In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 141.)

11

"We review a sanctions order for an abuse of discretion. [Citation.] Under that standard, we 'presume the trial court's order is correct and do not substitute our judgment for that of the trial court.' [Citation.] Further, we will uphold all orders based on express or implied findings supported by substantial evidence." (*Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 438.)

Substantial evidence supported the conclusion that D'Attaray's refiling of the stipulation in August 2022 was fraudulent conduct and that he acted in bad faith. There was evidence that Ohanian had withdrawn his consent to set aside the defaults well before August 2022. In the preceding months, Ohanian's counsel told D'Attaray numerous times that Ohanian would proceed with the defaults if there were further delays in filing the stipulation. It is undisputed that in March 2022, Ohanian's counsel made clear that Ohanian would be moving forward with the defaults. Further, D'Attaray's decision to apply ex parte for set aside relief in August 2022, rather than asking Ohanian's counsel to sign an updated stipulation, supported the inference that D'Attaray knew or suspected Ohanian no longer agreed to have the defaults set aside.

Moreover, despite requesting and receiving Ohanian's consent to set aside the defaults in December 2021, D'Attaray failed to complete the straightforward task of filing the executed stipulation for eight months. He subsequently failed to communicate with Ohanian's counsel and failed to appear at case management conferences. D'Attaray's deficient filings, non-responsiveness, and failures to appear necessitated substantial motion practice that further delayed litigation and caused unnecessary expense. This evidence of D'Attaray's disregard of

12

Ohanian's counsel's indications that the parties no longer had an agreement, his unjustifiable dereliction of his obligations, and his improper tactics, was sufficient to support the trial court's finding that D'Attaray acted fraudulently and in bad faith by refiling the January 2022 stipulation.

Defendants appear to argue the court had no basis to find D'Attaray acted fraudulently because he claimed that his mistakes and negligence led him to refile the stipulation in August 2022, and he did not engage in intentional misconduct. However, D'Attaray proffered the same explanations to the trial court. The court did not find D'Attaray credible. We do not second-guess that determination on appeal.[6] (*Cornerstone Realty*

---

[6] Defendants also argue that the trial court should have denied Ohanian's motion for sanctions because it improperly included a motion to strike and sought "two types of relief" in violation of the statute. (§ 128.5, subd. (f)(1)(A) [motion for sanctions must be filed "separately from other motions"].) We note defendants forfeited this argument by failing to timely assert it below. Although the trial court provided defendants an opportunity to make this and any other objection in a *timely* filed opposition, defendants failed to do so. In any event, we would reject the contention, even if preserved for our review. Ohanian's motion requested attorney fees and an order striking the stipulation and answer as sanctions for D'Attaray's conduct. It did not seek any relief or remedy other than sanctions. (Cf. *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225, fn. 7 [sanctions motion was not " 'made separately' " under § 128.7 when combined with a motion for spousal support arrears].) While the striking of the stipulation and answers was the necessary result of the court's finding that the stipulation was invalid, to the extent the "filed separately" requirement applied here, the trial court did not abuse its discretion in determining Ohanian's motion complied with section 128.5's requirements.

*Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56
Cal.App.5th 771, 806 [assessing credibility of witnesses on
sanctions motion is "task and exclusive province" of trial court].)

## II. Defendants Were Not Entitled To Relief Under Section 473's Mandatory Provision

### A. Legal principles and standard of review

Section 473, subdivision (b), contains " 'two distinct
provisions for relief from default' [citation]—one makes relief
discretionary with the court; the other makes it mandatory."
(*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244
Cal.App.4th 432, 438 (*Martin Potts*).)  The mandatory provision
states that "the court shall, whenever an application for relief is
made no more than six months after entry of judgment, is in
proper form, and is accompanied by an attorney's sworn affidavit
attesting to the attorney's mistake, inadvertence, surprise, or
neglect, vacate any . . . resulting default entered by the clerk
against the attorney's client, and which will result in entry of a
default judgment . . . unless the court finds that the default or
dismissal was not in fact caused by the attorney's mistake,
inadvertence, surprise, or neglect."  (§ 473, subd. (b).)

" ' "[I]f the prerequisites for the application of the
mandatory provision of section 473, subdivision (b) exist, the trial
court does not have discretion to refuse relief." ' [Citations.]
'Thus, to the extent that the applicability of the mandatory relief
provision does not turn on disputed facts, but rather, presents a
pure question of law, it is subject to de novo review.  [Citation.]
Where the facts are in dispute as to whether or not the
prerequisites of the mandatory relief provision of section 473,
subdivision (b), have been met, we review the record to determine
whether substantial evidence supports the trial court's findings.'

14

[Citations.]" (*Talbott v. Ghadimi* (2025) 109 Cal.App.5th 967, 977.)

### B. Discussion

D'Attaray's declaration admitted only two errors: (1) failing to "follow[ ] up on the status of the stipulation promptly" after filing the February 2022 stipulation; and (2) refiling, in August 2022, the stipulation the parties approved eight months earlier. The trial court did not err in concluding this declaration failed to satisfy the causation element of section 473, subdivision (b).

Section 473, subdivision (b), requires courts to vacate defaults or default judgment caused by attorney error "unless the court finds that the default . . . was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." "The clause in section 473, subdivision (b) which mandates the court to grant relief unless it finds that the default was not in fact caused by lawyer error is not only a credibility testing device. It is also 'a causation testing device.' [Citation.]" (*Milton v. Perceptual Development Corp.* (1997) 53 Cal.App.4th 861, 867.)

To warrant mandatory relief, a trial court must determine "that the *default* (i.e., the failure to respond) was in fact caused by attorney mistake or neglect." (*Cisneros v. Vueve* (1995) 37 Cal.App.4th 906, 911 (*Cisneros*); *Martin Potts*, *supra*, 244 Cal.App.4th at p. 442.) Defendants bore the burden of establishing that D'Attaray's conduct caused the entry of default. (*Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1410 [party seeking relief under § 473, subd. (b), "bears the burden of proof in establishing a right to relief"]); see also *Rodriguez v. WNT, Inc.* (2025) 116 Cal.App.5th 791, 807.) They did not meet that burden.

15

*Cisneros* is instructive. In that case, the defendants failed to respond to the plaintiff's complaint. The clerk entered the defendants' default. After the plaintiff submitted evidence at a default prove-up hearing in support of entry of a default judgment, the defendants' insurance carrier retained an attorney to represent the defendants. Defense counsel began work on a motion to set aside the default, then became involved in other matters and forgot about the file. (*Cisneros*, *supra*, 37 Cal.App.4th at p. 908.) The court entered default judgment in favor of the plaintiff. One hundred and eighty-two days later, the defendants filed a motion to set aside the default. Defense counsel submitted an affidavit admitting fault for the long period of inaction in the case. (*Id*. at pp. 908–909.)

The *Cisneros* court held the trial court properly denied relief because the motion did not establish that defense counsel was the proximate cause of the entry of default. The court explained that section 473, subdivision (b), "carves out an exception for relief where the 'default' was not caused by attorney misfeasance. '[T]he "default and default judgment are separate procedures." ' [Citation.] The Legislature's specific and careful use of both 'default' and 'default judgment' elsewhere in the statute shows that it understood the two terms and the material distinction between them. Yet while the amendment authorizes *relief* from both default and default judgment, the statute is equally clear that for mandatory relief to apply the court must also satisfy itself that the *default* (i.e., the failure to respond) was in fact caused by attorney mistake or neglect." (*Cisneros*, *supra*, 37 Cal.App.4th at pp. 910–911.) Defense counsel was not representing the defendants when the default was entered, thus

"as a matter of law . . . he was not the proximate cause of the entry of default as defined in the 'unless clause.' " (*Id*. at p. 912.)

The court in *Bailey v. Citibank* (2021) 66 Cal.App.5th 335, reached a similar result. In *Bailey*, defense counsel was assigned to a case after the defendant's default had been taken. (*Id*. at pp. 343, 344.) Eventually, a default judgment was entered. (*Id*. at p. 345.) The defendant subsequently sought relief under section 473. Defense counsel submitted a declaration stating that although he had intended to contact plaintiff's counsel to see if they would stipulate to set aside the default, he failed to do so before the court entered default judgment against his client. (*Id*. at pp. 344–345.) The trial court granted mandatory relief from default based on attorney fault. (*Id*. at p. 345.) The Court of Appeal reversed. Relying on *Cisneros*, the court found that mandatory relief was unavailable because defense counsel was retained after the default was entered and therefore "could not possibly have caused the default in this case." (*Id*. at p. 350.)

Here, there was no showing that D'Attaray's conduct was the proximate cause of the entry of default. D'Attaray did not admit fault or any responsibility for the original entry of default.[7] As explained in *Cisneros*, there is no indication that "the Legislature intended to relieve parties who carelessly permit the default to be entered when they subsequently hire equally neglectful attorneys whose failure to take action allows the default to ripen into a judgment." (*Cisneros*, *supra*, 37 Cal.App.4th at p. 912.) Unlike the defense counsel in *Cisneros*,

---

[7]     Instead, D'Attaray declared that defendants were never served with the summons and complaint. The record does not reflect, however, that defendants ever filed a motion to quash or a motion to vacate or set aside the default on that basis.

17

D'Attaray was both active and inactive before the entry of a default judgment, but the relevant point is that D'Attaray's admitted misfeasance occurred *after* the default was entered. His conduct merely allowed the default to ripen into a judgment.

D'Attaray admitted that refiling the stipulation in August 2022 was his "mistake." Yet, that conduct was not the proximate cause of the default. D'Attaray's actions and omissions after the entry of default—the failure to ensure the stipulation was filed and accepted, the failure to obtain or confirm Ohanian's counsel's consent as to the stipulation in August 2022, the filing of an invalid stipulation in August 2022—were all efforts to prevent the default from ripening into a judgment. D'Attaray's conduct resulted in the court *vacating* default on the mistaken belief that the refiled stipulation reflected both parties' continued consent to set default aside. Once it became clear there was no valid stipulation, the court had no choice but to reinstate the clerk's entry of default and restore the parties to their prior positions. The "re-entry" of default was not a new default that would reset the analysis under section 473, subdivision (b).

The trial court properly concluded that defendants failed to demonstrate entitlement to mandatory relief under section 473, subdivision (b).

**DISPOSITION**

The portion of the appeal challenging the trial court's $7,125 sanctions award is dismissed. In all other respects, the judgment is affirmed. Respondent to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

HANASONO, J.